**Susanne BAKER, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 94–SC–162–MR.

Supreme Court of Kentucky.

March 21, 1996.

Rehearing Denied June 20, 1996.

372

Rebecca Ballard DiLoreto, Assistant Public Advocate, Department of Public Advocacy, Frankfort, for appellant.

A.B. Chandler III, Attorney General, Perry T. Ryan, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, Danny Evans, London, for appellee.

LAMBERT, Justice.

Appellant was convicted of kidnapping ten-year-old Donald Scott Baker and of reckless homicide in connection with his death. In this matter of right appeal, appellant seeks reversal of the reckless homicide conviction on grounds that double jeopardy principles prevent her conviction of both crimes. In essence, she claims that the elements of the charges, as set forth in the court's instructions,[1] were "so inexorably interwoven" that

1. The relevant instructions were as follows:

*KIDNAPPING*

(A) You will find the Defendant, Susanne Baker, guilty of Kidnapping under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

1. That in Laurel County on or about the 25th day of November, 1992, and before the finding of the Indictment herein, that she alone or in complicity with Stephanie Baker restrained Donald Scott Baker.

the offense of kidnapping was consumed by the reckless homicide conviction.

Appellant's convictions arose out of the brutal murder of Donald Scott Baker, step-son of one Stephanie Baker.[2] On November 25, 1992, appellant drove Stephanie Baker to Pace's Creek Elementary School. Their purpose was to gain control of Scott Baker under the pretext of taking him to spend Thanksgiving with his father. Wearing a black wig for the purpose of disguise, appellant went into the school and upon the false representation that she was the child's cousin, prevailed upon school authorities to let her take him. While appellant was inside the school, Stephanie Baker waited in the car hiding in the back seat and covering herself with laundry. After appellant and the child had entered the car and they had all driven away, Stephanie Baker revealed herself. Sometime thereafter, Stephanie Baker grabbed Scott by the neck and began to choke him. Mercilessly, relentlessly, and despite his struggle, she strangled him until he was dead. Meanwhile, appellant had continued driving, but allegedly made some feeble effort to have Stephanie Baker stop the attack. After the child was dead, appellant and Stephanie Baker dumped the body in a hole in rural Laurel County. Later, consistent with their previous cruelty, they returned to the location of the body where Stephanie Baker set it afire. Appellant was indicted for complicity to commit murder, kidnapping and the misdemeanor offense of abuse of a corpse. She was convicted of reckless homicide, kidnapping and abuse of a corpse for which she was sentenced to a total of twenty-five years imprisonment.

At oral argument, appellant conceded that the facts in evidence could have supported a conviction under the statutory elements of both felony crimes. Appellant acknowledged that it would not have been unreasonable for the jury to have believed that she restrained Scott Baker with the intent to terrorize or inflict bodily injury upon him; and that it would not have also been unreasonable for the jury to have believed that she acted recklessly before or after Stephanie Baker commenced the attack upon the child. By her own account, after having lured the child into the company of Stephanie Baker, in circumstances where she knew or should have known that he was endangered, appellant continued her participation by driving the car after the attack upon the child had begun. She made little or no effort to stop it. Such facts are sufficient to support a conviction of kidnapping and reckless homicide.

Appellant maintains, however, that as presented in the instructions, the crime of kidnapping was consumed by the reckless homicide. In particular, she claims a double jeopardy bar by virtue of the inclusion of kidnapping in the reckless homicide instructions, reasoning therefrom that a finding of guilt of reckless homicide precludes a separate conviction for one of its elements. She also maintains that failure of the jury to

2. That in so restraining Donald Scott Baker it was the Defendant's intention to accomplish or advance the commission of murder, or to inflict bodily injury, or to terrorize Donald Scott Baker or another person.
(B) If you find the defendant, Susanne Baker, guilty under this Instruction and if you further find that Donald Scott Baker was released alive, then you shall state in your verdict that you find the Defendant guilty of kidnapping.
(C) If you find the Defendant, Susanne Baker, guilty under this instruction and you further find from the evidence beyond a reasonable doubt that Donald Scott Baker was not released alive, then you shall so state in your verdict in addition to stating that you find the Defendant guilty of Kidnapping.

*RECKLESS HOMICIDE*

If you do not find the Defendant, Susanne Baker guilty of Murder under Instruction 4.1; guilty of Murder under Instruction 4.2; or, guilty of Second Degree Manslaughter under Instruction No. 4.3, then you will find the Defendant guilty of Reckless Homicide under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
   A. That in Laurel County on or about November 25, 1992, and before the finding of the Indictment herein, she voluntarily participated in kidnapping Donald Scott Baker;
   B. That during the course of that kidnapping, and as a consequence thereof, Donald Scott Baker was killed;
AND
   C. That by so participating in that kidnapping the Defendant was acting recklessly with respect to the death of Donald Scott Baker.

2. Appellant Susanne R. Baker is not related to Stephanie Baker nor to the victim.

convict her of murder establishes that she did not intend the child's death at the time he was kidnapped or at any time thereafter. As such, she argues that the kidnapping conviction consisted of restraint plus an intent to terrorize or cause bodily harm, but not death, elements she compares broadly to recklessness. These, she concludes, are the same elements used to convict of reckless homicide.

■ At the outset we must observe that appellant's double jeopardy claim is unpreserved. Appellant made no double jeopardy objection whatsoever nor did she tender instructions. She did object to the instructions which were given on grounds that they contained overlapping mental states. Nevertheless, we have held in *Sherley v. Commonwealth*, Ky., 558 S.W.2d 615, 618 (1977), and *Gunter v. Commonwealth*, Ky., 576 S.W.2d 518, 522 (1978), that failure to object on grounds of double jeopardy does not constitute a waiver of the right to raise the issue for the first time on appeal. This view appears to be based on *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975), a per curiam opinion which held that a plea of guilty after an unsuccessful plea of double jeopardy would not constitute waiver; that the merits of the double jeopardy claim should be reviewed on appeal. *Menna*, 423 U.S. at 62, 96 S.Ct. at 242. From *Menna* to *Sherley* and *Gunter* is a significant leap of logic and we now question its soundness. A principal reason for doubting the soundness of the rule, in addition to the general reasons for requiring preservation, is the difficulty of analyzing a double jeopardy claim when there is no context from the trial court. In such a circumstance, an appellate court must decide from the entire record whether double jeopardy principles have been violated on any one of multiple bases. As such, appellant's counsel is at liberty to throw every possible double jeopardy theory at the Court without having had to analyze and present such claims in the trial court. Deciding issues in such a manner is fraught with danger of error or omission and we can think of no compelling reason for such deference to double jeopardy principles. As with other rights, constitutional rights may be waived by failure to timely and properly present the issue. *West v. Commonwealth*, Ky., 780 S.W.2d 600, 602 (1989). Nevertheless, we will observe the *Sherley* rule in this case and address the merits of appellant's double jeopardy claim.

■ Initially, we have no difficulty with appellant's contention that no persuasive distinction can be made between multiple charges presented in the same trial rather than successive prosecutions. Whether the claim of double jeopardy arises out of a single prosecution or successive prosecutions, the analysis of whether there has been a violation should be the same. We so held in *Walden v. Commonwealth*, Ky., 805 S.W.2d 102, 106 (1991), and see no reason to depart from the rule.

Much of this Court's recent decisional law on double jeopardy has come in the wake of *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), in which the Supreme Court held that a subsequent prosecution would be barred if it was necessary to prove the same conduct for which a defendant had already been prosecuted. *Walden v. Commonwealth*, Ky., 805 S.W.2d 102 (1991); *Ingram v. Commonwealth*, Ky.,. 801 S.W.2d 321 (1990). In general, application of *Grady v. Corbin* resulted in broadly proscribing multiple convictions arising out of a single act or occurrence. Such was clearly the result in *Ingram* and *Walden*. However, it is now generally agreed that *Grady* was overruled in *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), in which the Court returned to the "same elements" test as in the venerable *Blockburger* decision. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Simply stated, *Blockburger* directs our focus upon the statutory elements of each offense and requires inquiry into "whether each provision requires proof of an additional fact which the other does not." *Id.* at 739, 113 S.Ct. at 2879. As best we understand *United States v. Dixon*, the *Blockburger* test is now the Supreme Court's prevailing interpretation of the double jeopardy clause of the Fifth Amendment. U.S. Const. amend. V.

Meanwhile, while *Grady* prevailed, we decided *Walden* and *Ingram*. We were not content to merely observe the mandate of *Grady*. Instead, we held that Section 13 of the Constitution of Kentucky mandated double jeopardy protection which went beyond the so-called "federal floor." *See generally Commonwealth v. Wasson*, Ky., 842 S.W.2d 487, 492 (1993). As such, our decisions in *Ingram* and *Walden* have now been engrafted upon the Constitution of Kentucky and while such does not provide insulation from modification or overruling, principles of *stare decisis* counsel caution.

For her initial double jeopardy claim, appellant contends that our decision in *Ingram v. Commonwealth* controls the outcome here. She maintains that her conduct arose from but a single act or impulse, having no compound consequences. She further contends that her convictions herein are, in reality, one offense and relies on *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993).

■ While appellant claims that she committed but a single act, bringing her conduct within the *Ingram* formulation, the evidence is otherwise. It should be remembered that the criminal episode, from the time the child was taken from school until the time of his murder required a substantial period of time. The jury could have believed that the act of kidnapping was complete when appellant deceptively took the child from school and delivered him into the hands of Stephanie Baker, one she knew or should have known desired to terrorize or cause him bodily harm. Likewise, when appellant thereafter commenced driving the car with the child and Stephanie Baker as passengers, and particularly after Stephanie Baker had commenced her attack upon the child, the jury could have believed her conduct amounted to reckless homicide.

The cases relied upon most heavily by appellant, *Walden v. Commonwealth*, Ky., 805 S.W.2d 102 (1991), *Ingram v. Commonwealth*, Ky., 801 S.W.2d 321 (1990), *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), and *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), had as their common

element a single act or impulse; one which, when done, required nothing further. In those circumstances, the question is whether that single act should be subjected to multiple punishments. In this case, however, no such circumstance prevails. For an appropriate analysis, see *Bedell v. Commonwealth*, Ky., 870 S.W.2d 779, 782 (1993), and *Harris v. Commonwealth*, Ky., 793 S.W.2d 802, 805–06 (1990).

■ As stated before, appellant's primary double jeopardy claim rests upon an analysis of the instructions and her contention that conviction for reckless homicide constitutionally precludes the kidnapping conviction, albeit while conceding that if one offense is to fall, it is the one carrying the lesser punishment. *Walden v. Commonwealth*, Ky., 805 S.W.2d 102, 107 (1991). As authority we are urged to apply *O'Hara v. Commonwealth*, Ky., 781 S.W.2d 514 (1989), which held that when the elements of an offense are used to elevate another offense, the former may not be separately prosecuted. *Id.* at 515–16.

For the sake of discussion, we concede that language in the instructions given here overlaps. In particular, the reckless homicide instruction widely uses the term "kidnapping" to describe the reckless conduct. However, the instruction also requires a finding that participation in the kidnapping was an act of recklessness with respect to the victim's death and, obviously, that the victim died. KRS 507.050. However, under the kidnapping instruction, the crime was complete without regard to the death of Donald Scott Baker. The kidnapping instruction required a finding that appellant acted to restrain the victim, and that her intention in doing so was to "advance the commission of murder, or to inflict bodily harm, or to terrorize Donald Scott Baker or another person." As such, appellant's guilt of kidnapping, unlike reckless homicide, did not require proof of the victim's death. KRS 509.040. Our decision in *O'Hara v. Commonwealth*, Ky., 781 S.W.2d 514 (1989), may be distinguished from this case by its use of *all* proven elements of the assault charge to elevate the robbery to robbery in the first degree. By implication, *O'Hara* suggests that if possession of a deadly weapon had

been the element which permitted enhancement, then both the assault conviction and the first degree robbery conviction would have been sustained. *Id.* at 515.

 With regard to the latter portions of the kidnapping instruction, appellant considers the overlap substantial enough to merit reversal of the reckless homicide conviction. *Supra* n. 1. Part A of the Instruction sets forth the necessary elements for guilt of kidnapping. Parts B and C require the jury to state in its verdict whether the victim was released alive. However, whether the victim was released alive is not an element of the substantive offense of kidnapping. Such a determination is used only for purposes of determining the range of punishments which may be imposed. KRS 509.040. The jury's deliberation as to whether the victim was released alive could not have begun until appellant had been found guilty of kidnapping. As the death of the victim was not an element of the kidnapping instruction, any overlap between parts B and C of the kidnapping instruction and the reckless homicide instruction was not prejudicial.

In final analysis, we believe what happened here properly may be regarded as a continuing course of conduct for which appellant may be held accountable for each criminal act committed. This was our approach in *Harris v. Commonwealth,* Ky., 793 S.W.2d 802 (1990), whereby the defendant was convicted of murder and kidnapping. We said, "In the case at bar, however, appellant was not twice punished for the same act, but rather was punished for two separate courses of conduct...." *Id.* at 806. We reached the same result in *Wilson v. Commonwealth,* Ky., 836 S.W.2d 872, 890 (1992), and *Cosby v. Commonwealth,* Ky., 776 S.W.2d 367, 372–73 (1989).

For the foregoing reasons, appellant's convictions are affirmed.

GRAVES, KING, LAMBERT, and WINTERSHEIMER, JJ., concur.

STEPHENS, C.J., concurs by separate opinion in which STUMBO, J., joins.

STEPHENS, Chief Justice, concurring.

I concur with the opinion of the Court except for that portion which suggests the possibility of overruling our decisions in *Sherley v. Commonwealth,* Ky., 558 S.W.2d 615 (1977), and *Gunter v. Commonwealth,* Ky., 576 S.W.2d 518 (1978). These cases hold that issues of double jeopardy may be reviewed on appeal even though insufficiently raised or preserved in the trial court. In my opinion, a right so fundamental as the prohibition against double jeopardy should be reviewable without regard to preservation or waiver by procedural default.

STUMBO, J., joins this concurring opinion.