Sotoy A. MINTER, Appellant

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2012–SC–000371–MR.

Supreme Court of Kentucky.

Dec. 19, 2013.

Julia Karol Pearson, Assistant Public Advocate, Department of Public Advocacy, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, James Hays Lawson, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Counsel for Appellee.

Opinion of the Court by Justice VENTERS.

Appellant, Sotoy J. Minter, appeals as a matter of right, Ky. Const. § 110, from a judgment of the Madison Circuit Court convicting him of first-degree sodomy and first-degree burglary, enhanced by the status offense of persistent felony offender (PFO) in the second-degree. For these offenses, Appellant was sentenced to thirty-five years' imprisonment.

On appeal Appellant raises the following arguments: (1) the trial court erred by denying his motion for a directed verdict on the burglary charge because the Commonwealth failed to prove the statutory element of criminal intent; (2) the trial court improperly applied KRE 412 to prohibit admission of evidence of the victim's sexual history; and (3) the trial court erred in allowing the Commonwealth to proceed to trial on the PFO charge. For the reasons set forth below, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

According to evidence presented at trial, Appellant attended a party at an apartment next door to the apartment of Larry Griffin and his girlfriend, Beth, who were also attending the party. Appellant, Lar-

ry, and many others attending the party became intoxicated. Because of his intoxication, Larry decided to leave, so Beth asked Appellant to help her get Larry back to their apartment. Upon arriving at his apartment, Larry fell asleep and Beth returned to the party. Larry testified that the next thing he remembered was waking up with Appellant on top of him, holding him down by the shoulders. Larry testified that he was resistant and repeatedly asked Appellant to leave, but that Appellant was too strong and ultimately overpowered him, forcibly imposing upon him an act of anal intercourse. After the incident, Larry, bleeding from his rectum and in pain, contacted police and was taken to the emergency room by ambulance, where a rape kit examination was performed. DNA results from an anal swab taken from Larry were a positive match for Appellant.

Some seventeen months after the incident, Appellant was indicted and charged with first-degree sodomy, first-degree burglary, and assault in the fourth-degree.[1] Only a few months of the delay can be attributed to the DNA testing. Trial was scheduled for six months later, twenty-three months' after the event. Just one month before the first scheduled trial date, the Commonwealth procured a superseding indictment charging Appellant with the same three offenses, but adding a fourth count charging Appellant with being a persistent felony offender in the second-degree. Appellant moved to dismiss the additional count or to exclude it from the scheduled trial. The trial court denied the motion. The case proceeded to trial in February 2012, some twenty-five months after the alleged crimes occurred.

At trial, Appellant disputed Larry's version of the incident. Appellant insisted that the sexual encounter was entirely consensual. He claimed that after Beth returned to the party, Larry invited him into the apartment and invited Appellant's sexual advances. Appellant testified that Larry did not resist, but was instead a willing participant in the encounter.

At the conclusion of the trial, the jury returned a verdict convicting Appellant as set forth above. The trial court entered final judgment imposing the sentence as recommended by the jury—thirty-five years' imprisonment.

## II. APPELLANT WAS NOT ENTITLED TO A DIRECTED VERDICT ON THE BURGLARY CHARGE

▆▆▆ Appellant argues that the trial court erred in denying his motion for a directed verdict of acquittal on the charge of first-degree burglary because the evidence presented at trial was insufficient to allow a reasonable jury to reach a guilty verdict. The standard for reviewing a motion for directed verdict is well established:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

*Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky.1991). On appellate review,

---

1. The fourth-degree assault charge was dismissed at trial in response to the Commonwealth's motion.

the reviewing court may only direct a verdict "if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt." *Id.; see also Commonwealth v. Sawhill*, 660 S.W.2d 3, 5 (Ky.1983).

Appellant argues that he was entitled to a directed verdict on the burglary charge because the evidence at trial failed to establish that he had the requisite intent. KRS 511.020, which establishes the offense of first-degree burglary, requires that to be guilty of the crime, one must enter or remain unlawfully in a building "with the intent to commit a crime." Appellant contends that his own testimony asserting his belief that he had been invited into Larry's apartment for the purpose of engaging in consensual sex leaves no room for an inference by the jury that he was in the apartment with the intent to commit a crime. We disagree.

Sufficient evidence was presented at trial to support a reasonable juror's belief that Appellant met the statutory standard for first-degree burglary. This evidence included Larry's direct testimony that he did not invite Appellant into the apartment, that he repeatedly asked Appellant to leave the apartment, and that he did not consent to the sexual encounter. The physical evidence of Larry's injuries provides circumstantial evidence supporting the Commonwealth's case.

Our courts have long held that a jury is free to believe the testimony of one witness over the testimony of others. *See Adams v. Commonwealth*, 560 S.W.2d 825, 827 (Ky.App.1977). In ruling on Appellant's motion, the trial court was required to construe conflicting evidence in the light most favorable to the Commonwealth. *Benham*, 816 S.W.2d at 187. The testimony of a single witness is enough to support a conviction. *See Gerlaugh v. Common-*

*wealth*, 156 S.W.3d 747, 758 (Ky.2005) (citing *LaVigne v. Commonwealth*, 353 S.W.2d 376, 378–79 (Ky.1962)).

Appellant's argument also fails because matters of credibility and of the weight to be given to a witness's testimony are solely within the province of the jury. The appellate courts cannot substitute their judgment on such matters for that of the jury. *Brewer v. Commonwealth*, 206 S.W.3d 313, 319 (Ky.2006) (citing *Commonwealth v. Jones*, 880 S.W.2d 544, 545 (Ky.1994)). Therefore, we may not simply reject Larry's testimony and instead choose to believe Appellant's version because "[d]etermining the proper weight to assign to conflicting evidence is a matter for the trier of fact and not an appellate court." *Washington v. Commonwealth*, 231 S.W.3d 762, 765 (Ky.App.2007)[2] (citing *Bierman v. Klapheke*, 967 S.W.2d 16, 19 (Ky.1998)).

Thus, based on the evidence as a whole, it was not unreasonable for a jury to conclude Appellant entered Larry's apartment without permission, with the intent to sodomize him, and in doing so, caused him physical injury. Accordingly, the trial court did not err in denying Appellant's motion for a directed verdict on the first-degree burglary charge.

## III. THE TRIAL COURT PROPERLY EXCLUDED EVIDENCE UNDER THE RAPE SHIELD RULE, KRE 412

Next, we consider Appellant's argument that the trial court denied him the opportunity to present a complete defense by barring testimony that the victim had on other occasions engaged in homosexual activity. The trial court excluded the testimony based upon KRE 412, Kentucky's

---

**2.** *Overruled on other grounds by King v. Commonwealth*, 302 S.W.3d 649 (Ky.2010).

"Rape Shield Law" and also because it was hearsay.

■ Appellant sought to introduce at trial a witness's testimony that Larry's girlfriend, Beth, had said that on multiple occasions she caught Larry engaging in sexual acts with men. The trial court refused to admit the proposed testimony because KRE 412 bars the introduction of evidence of an alleged victim's sexual activity when its only relevance is to prove the "victim's sexual predisposition" or that the "victim engaged in other sexual behavior." Appellant contends that the testimony should have been admitted to substantiate his claim that Larry falsely charged that he was raped in order to conceal the fact that he was gay and to avoid Beth's anger that he had again engaged in such sexual activity. In that context, it is clear that the proffered testimony was subject to the exclusion afforded by KRE 412. Evidence that Larry had consensually engaged in other sexual activity with men suggests nothing other than a sexual predisposition for such activity, exactly what the rule prohibits.

This general prohibition is, however, subject to certain exceptions in a criminal case. Specifically, under KRE 412(b)(1), the evidence is admissible in a criminal case:

A. To prove that a person other than the accused was the source of semen, injury, or other physical evidence;

B. To prove consent, if the evidence involves instances of sexual behavior by the alleged victim with the person accused of the sexual misconduct;

C. If the evidence pertains directly to the offense charged.

None of those exceptions apply to the evidence Appellant sought to have admit-ted. The testimony did not show that someone other than Appellant might have been the source of the semen found on the victim, and indeed, Appellant concedes that it was his. It was not evidence of any prior sexual behavior the alleged victim had with the Appellant, and to the contrary, Appellant never claimed that consent was based upon prior sexual experience with the alleged victim. And finally, the proposed testimony does not pertain directly to the specific offense charged beyond the prohibited purpose of showing Appellant's alleged sexual predisposition to homosexual conduct. The testimony fits within none of the exceptions to the general rule against admitting such evidence.

■ Appellant implies that because the victim said that he was "straight," that is, he claimed he was not predisposed toward gay sexual relations, evidence that he had voluntarily engaged in other homosexual conduct acquired a unique relevance. We disagree. There is no doubt that KRE 412 operates to shield putative victims from disclosure of prior sexual behaviors that have no relevance to the offense on trial except to cast a negative light upon the alleged victim. The purpose of the rule and the language of the rule allow for no differentiation between heterosexual behavior and homosexual behavior. Accordingly, the testimony was inadmissible under KRE 412 because it is evidence of "other sexual behavior" that is offered to cast doubt on Larry's testimony with evidence of his alleged prior sexual behavior and his alleged sexual predisposition.

■ Citing *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), Appellant additionally argues that the application of KRE 412 to prohibit the proffered testimony curtailed his ability to present a complete defense. We find this argument unpersuasive. Appellant's defense was that Larry consented

to the sexual conduct but later claimed that he was forcibly compelled to engage in the sexual act. It bears emphasis that *Chambers* itself makes clear that "the right to confront and to cross examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal process." 410 U.S. at 295, 93 S.Ct. 1038.

In *Montgomery v. Commonwealth*, 320 S.W.3d 28 (Ky.2010), we addressed a similar argument, there relating to the use of KRE 412 to bar the admission of evidence pertaining to a juvenile victim's prior sexual behavior. In that case we recognized that the exclusion of evidence of a victim's prior sexual history could, in some circumstances, unconstitutionally impinge upon a defendant's right to present a complete defense. We required a balancing of the competing interests, weighing the probative value of the proffered evidence against KRE 412's purpose of protecting the victim's privacy and eliminating unduly prejudicial character evidence from the trial. 320 S.W.3d at 42–43.

 Assessing those interests as they appear in the record before us, we conclude that the trial court made the correct decision. The evidence Appellant sought to admit had only marginal relevance to proving that Larry was motivated to lie about the event. Whether Larry had in the past voluntarily engaged in similar sexual behavior with others, and whether his girlfriend knew about that alleged past behavior and was angry about it, adds little credence to Appellant's defense and its admission would totally undermine the policy implicit in KRE 412. Clearly, the line demarcated in *Montgomery* was not crossed by the straight-forward application

of KRE 412, used merely to exclude Appellant's prior sexual conduct and his sexual predisposition.

In summary, the trial court properly applied KRE 412 under the circumstances of this case, and the trial court's ruling did not violate Appellant's constitutional right to present a full and complete defense.[3]

## IV. THE TRIAL COURT DID NOT ERR IN ALLOWING THE PFO CHARGE TO PROCEED TO TRIAL

Appellant argues the trial court erred in allowing the Commonwealth to proceed to trial on the PFO charge set forth in the superseding indictment. The principal reasons which Appellant asserts for the illegality of the PFO charge is that the late and untimely presentation of that offense to the grand jury offends "fundamental conceptions of justice" and the "community's sense of fair play and decency."

 We are not persuaded. The reason for the long delay in bringing the PFO charge has not been presented to this Court. While we decline to speculate among the countless reasons that might explain the delay, we fail to see that the Commonwealth attained any unfair advantage over Appellant by the long delay in bringing forth the PFO charge. More importantly, Appellant identifies no such advantage nor does he identify any specific prejudice he suffered by the timing of the PFO charge.

In *Price v. Commonwealth*, 666 S.W.2d 749 (Ky.1984) we interpreted the PFO statute as requiring that if the Commonwealth seeks a sentencing enhancement by proof of the defendant's PFO status, then

---

**3.** Having determined the testimony is inadmissible pursuant to KRE 412, we need not address the Commonwealth's argument that the testimony was inadmissible under our

hearsay rules. Appellant never addressed this alternate ground for affirming the trial court's exclusion of the proffered testimony.

the defendant is entitled to notice of this before the trial of the underlying substantive offense. In reaching this conclusion, we stated that "[a] separate indictment meets this requirement just as does a separate count in the indictment charging the substantive offense to which it refers." *Id.* at 750. We further noted that "[t]he real issue ... is whether Price was substantially prejudiced by the Commonwealth's procedure of separately indicting him for first-degree robbery and as a first-degree PFO." *Id.* We then concluded that because Price was arraigned on the PFO charge "nearly one full month" before he proceeded to trial he had reasonable notice and was not deprived of the opportunity to defend against the charge.[4] *Id.* We therefore find no undue prejudice to Appellant created by the superseding indictment and no error in the trial court's refusal to dismiss or exclude the PFO charge.

## V. CONCLUSION

For the foregoing reasons, the decision of the, Madison Circuit Court is affirmed.

All sitting. All concur.

---

4. In connection with this argument Appellant cites to the speedy trial rules contained in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), in an attempt to argue that he is entitled to relief because the Commonwealth unreasonably delayed in bringing the PFO indictment. For the reasons explained, however, we are unpersuaded that *Barker* has any application to the issue we address.